**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| LETITIA ALLEN, an individual | ) ) ) | Case No. |
| | ) | |
| Plaintiff, | ) ) | COMPLAINT & DEMAND FOR JURY TRIAL |
| v. | ) ) | |
| PICK FIVE IMPORTS, INC. d/b/a MAXI-MATIC U.S.A., INC., a California Corporation; and DOES 1-100, inclusive, | ) ) ) ) | |
| Defendant. | ) ) ) ) | |

**COMPLAINT**

Plaintiff, **LETITIA ALLEN** (hereafter referred to as "Plaintiff"), by and through undersigned counsel, files this Complaint and Demand for Jury Trial against Defendants **PICK FIVE IMPORTS, INC. d/b/a MAXI-MATIC U.S.A., INC.** (hereafter referred to as "Defendant Maxi-Matic") and **DOES 1-100** (hereafter referred to as "Doe Defendants") (collectively referred to as "Defendants"), and in support thereof, makes the following allegations:

**NATURE OF THE CASE**

1.     Defendant Maxi-Matic designs, manufactures, markets, imports, distributes and sells a wide-range of consumer kitchen products, including the subject "Elite Platinum 8-Quart Digital Electric Pressure Cooker," which specifically includes the Model Number EPC-813 (referred to hereafter as the "pressure cooker(s)" and/or "product") that is at issue in this case.

1

2.      Defendant Maxi-Matic touts the "advanced technology"[1] of its pressure cookers, and states that they cannot open while in use. Despite Defendant's claims of "advanced technology," it designed, manufactured, marketed, imported, distributed and sold, both directly and through third-party retailers, a product that suffers from serious and dangerous defects. Said defects cause significant risk of bodily harm and injury to its consumers.

3.      Specifically, said defects manifest themselves when, despite Defendant's statements, the lid of the pressure cooker can detach with built-up pressure, heat and steam still inside the unit. When the lid becomes detached under such circumstances, the pressure trapped within the unit causes the scalding hot contents to be projected from the unit and onto the surrounding area, including onto the unsuspecting consumers, their families and other bystanders.

4.      Defendant knew or should have known of these defects, but has nevertheless put profit ahead of safety by continuing to sell its pressure cookers to consumers, failing to warn said consumers of the serious risks posed by the defects, and failing to recall the dangerously defective pressure cookers regardless of the risk of significant injuries to Plaintiff and consumers like her.

5.      The Plaintiff in this case was using the pressure cooker when the lid suddenly burst open while the pressure cooker retained pressure, causing her serious and substantial bodily injuries and damages including, but not limited to, burn injuries to her face, neck, arms, shoulders, torso and right foot.

6.      As a direct and proximate result of Defendants' collective misconduct, the Plaintiff in this case incurred significant and painful bodily injuries, medical expenses, lost wages, physical pain, mental anguish, and diminished enjoyment of life.

---

[1] *See*, e.g. Elite Platinum EPC-813 Owner's Manual, pg. 5. A copy of the Owner's Manual is attached hereto as "Exhibit A".

## PARTIES

7.     Plaintiff, Letitia Allen, is an adult citizen and resident of the state of Ohio, residing at 1191 Whitney Lane, Westerville, OH 43081.

8.     Defendant Maxi-Matic is a California corporation, with its principal place of business and registered service at 18401 Arenth Avenue, STE. B, City of Industry, California 91748. Defendant Maxi-Matic designs, manufactures, markets, imports, and distributes and sells a variety of consumer kitchen products, including pressure cookers, air fryers, and blenders, amongst others, and does business in all 50 states, which specifically includes the state of Michigan.

9.     Plaintiff is ignorant of the identities of Doe Defendants, and therefore sues these defendants by such fictitious names. The Doe Defendants may be individuals, partnerships, or corporations. Plaintiff is informed and believes, and thereon alleges, that at all times mentioned herein, each of the Doe Defendants were the parent, subsidiary, agent, servant, employee, co-venturer, and/or co-conspirator of Defendant Maxi-Matic and were, at all times mentioned, acting within the scope, purpose, consent, knowledge, ratification and authorization of such agency, employment, joint venture and conspiracy. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named Doe Defendants are responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages as herein alleged were proximately caused by their conduct.

## JURISDICTION AND VENUE

10.     This Court has personal jurisdiction over Defendants because Defendants systematically served Michigan's market for the product.

3

11.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(a) because there is complete diversity of the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

12.     Venue is proper in this Court pursuant to 28 U.S.C. §1391 because Defendants do business in this district and all or a substantial part of the events or omissions giving rise to this claim occurred in this district.

## **FACTUAL BACKGROUND**

13.     Defendant Maxi-Matic is engaged in the business of designing, manufacturing, warranting, marketing, importing, distributing and selling the pressure cookers at issue in this litigation.

14.     Defendant Maxi-Matic aggressively warrants, markets, advertises and sells its pressure cookers as "advanced technology"[2] allowing consumers to cook "faster and healthier."[3]

15.     According to the Owner's Manual accompanying each individual unit sold, the pressure cookers purport to have a safety feature in which "the lid will not open unless all pressure is released"[4]; misleading the consumer into believing that the pressure cookers are reasonably safe for their normal, intended use.

16.     By reason of the forgoing acts or omissions, the Plaintiff purchased the pressure cooker on or about November 13, 2020, with the reasonable expectation that it was properly designed and manufactured, free from defects of any kind, and that it was safe for its intended, foreseeable use of cooking.

---

[2] *Id.*
[3] *Id.*
[4] *Id.* at pg. 15.

17.   Plaintiff used her pressure cooker for its intended purpose of preparing meals for herself and/or family and did so in a manner that was reasonable and foreseeable by the Defendants.

18.   However, the aforementioned pressure cooker was defectively and negligently designed and manufactured by the Defendants in that they failed to properly function as to prevent the lid from detaching while the unit remained pressurized, during the ordinary, foreseeable and proper use of cooking food with the product; placing the Plaintiff, her family, and similar consumers in danger while using the pressure cookers.

19.   On January 9, 2022, Plaintiff was using the pressure cooker at her mother's home in Dearborn, Michigan to make turkey legs.

20.   Plaintiff, in the ordinary, foreseeable and proper use of the pressure cooker, was standing a few feet away from the pressure cooker when the lid of the pressure cooker suddenly exploded and boiling hot contents ejected onto her face, neck, arms, shoulders, torso and right foot.

21.   Following the eruption, Plaintiff was covered in scaling hot foot and liquid.

22.   Plaintiff was severely burned and was taken to the emergency department of Corewell Health Dearborn Hospital in Dearborn, Michigan where she was rushed to a trauma bay.

23.   However, Plaintiff's injuries were too severe to treat and emergency medical services transferred her to the Burn Center of the Detroit Receiving Hospital in Detroit, Michigan.

24.     Plaintiff was directed to seek follow-up treatments and did so at the Ohio State Burn Care in McCampbell Outpatient Care in Columbus, Ohio on January 14, 2022, January 19, 2022, January 26, 2022, and February 18, 2022.

25.     As a direct result of the release of the scalding hot foot, liquid, and steam caused by the conduct of Defendants and the negligent, reckless, and defective design and manufacture of the pressure cooker, Plaintiff suffered burns to her face, neck, arms, shoulders, torso and right foot.

26.     The release of the scalding hot food, liquid and steam caused Plaintiff to suffer second and third-degree burns, resulting in horrendous pain and suffering.

27.     Plaintiff has suffered permanent physical scars and disfigurement in addition to significant emotional scars, from which she will never fully recover.

28.     Upon information and belief, prior to distributing the pressure cookers, Defendants did not conduct a hazard or risk analysis and did not conduct adequate testing and investigation to determine whether the product presented an unreasonable risk of harm during expected and foreseeable use of the product.

29.     Defendants' pressure cookers possess defects that make them unreasonably dangerous for their intended use by consumers because the lid can become detached while the unit remains pressurized.

30.     Further, Defendants' representations about "safety" are not just misleading, they are flatly wrong and put innocent consumers like Plaintiff directly in harm's way.

31.     Economic, safer alternative designs were available that could have prevented the pressure cooker's lid from detaching while pressurized.

32.    Defendants knew or should have known that their pressure cookers possessed defects that pose a serious safety risk to Plaintiff and the public. Nevertheless, Defendants continue to ignore and/or conceal their knowledge of the pressure cookers' defects from the general public and continues to generate a substantial profit from the sale of their pressure cookers.

33.    As a direct and proximate result of Defendants' intentional concealment of such defects, their failure to warn consumers of such defects, their negligent misrepresentations, their failure to remove a product with such defects from the stream of commerce, and their negligent design of such products, Plaintiff used an unreasonably dangerous pressure cooker, which resulted in significant and painful bodily injuries to Plaintiff.

34.    Consequently, the Plaintiff in this case seeks compensatory damages resulting from the use of Defendants' pressure cooker as described above, which has caused the Plaintiff to suffer from serious bodily injuries, medical expenses, lost wages, physical pain, mental anguish, diminished enjoyment of life, and other damages.

## CLAIMS FOR RELIEF

### COUNT I – NEGLIGENCE
**(DEFENDANT MAXI-MATIC AND DOE DEFENDANTS)**

35.    Plaintiff realleges and incorporates by reference every allegation of this Complaint as if each were set forth fully and completely herein.

36.    At all times relevant, Defendants were in the business of designing, developing, testing, manufacturing, labeling, marketing, advertising, promoting, monitoring, selling and/or distributing the product.

37.    Defendants played a role in the design and testing of the product, either by virtue of the Defendants' control of the product and labeling, ownership of the product's patent and

intellectual property, control over the entity or entities involved in the product manufacture and labeling, and/or involvement in contractual agreements that required participation and engagement in the design and testing of the product.

38.     Defendants had a duty to exercise reasonable and ordinary care in the designing, developing, testing, manufacturing, labeling, marketing, advertising, promoting, monitoring, selling and/or distributing of the product so as to avoid exposing others to foreseeable and unreasonable risks of harm.

39.     Defendants breached their duty of care to the Plaintiff in designing, developing, testing, manufacturing, labeling, marketing, advertising, promoting, monitoring, selling and/or distributing of the product.

40.     Defendants knew or reasonably should have known that the product was dangerous or likely to be dangerous when used in its intended or reasonably foreseeable manner.

41.     At the time of the development and design of the product, Defendants knew or should have known that the product was designed in such a manner so as to possess a risk of serious injury and/or death as a result of burn injuries.

42.     Defendants knew or reasonably should have known that the purchasers and/or consumers of the product would not realize the danger associated with the use of the product for its intended use and/or in a reasonably foreseeable manner.

43.     Defendants had a duty to perform adequate testing on the product to ensure the product that entered in the United States marketplace did not possess a risk of serious injury and/or death as a result of burn injuries.

44.     Defendants breached their duty to exercise reasonable and prudent care in the testing and monitoring of the product by failing to perform reasonable and adequate testing of the

product, including but not limited to testing of the product's design and manufacture to ensure the avoidance of pressurized lid detachments, which acts as a bomb, leading to the ejection of boiling hot contents.

45.     Defendants also breached their duty to exercise reasonable and prudent care by failing to provide the product with all elements necessary to make it safe for its intended and foreseeable uses.

46.     Defendants also breached their duty to exercise reasonable and prudent care by failing to recall the product, which would have prevented Plaintiff's injuries.

47.     A reasonable manufacturer, designer, distributor, promotor, or seller under the same or similar circumstances would not have engaged in the aforementioned acts and omissions given the extensive knowledge of pressurized lid detachments, leading to serious burn injuries, both at the time of development and use.

48.     As a direct and proximate result of the Defendants' negligent testing, monitoring, and labeling of the product, Defendants introduced a product into the United States marketplace that is known to cause burn injuries, and Plaintiff has been injured catastrophically and sustained severe and permanent pain, suffering, disability, and impairment, loss of enjoyment of life, loss of care, comfort, and economic damages.

49.     As a direct and proximate result of the aforementioned negligence and carelessness, as described above, Plaintiff, Letitia Allen, suffered the following injuries, all or some of which may be permanent in nature, including:

(a)     First and second-degree burns to the face, neck, arms, shoulders, torso and right foot, leaving large areas of scarring;
(b)     Emergency medical care and treatment by burn specialists;
(c)     Permanent scarring, bruising, and disfigurement;
(d)     Decreased mobility and dexterity;
(e)     Reduction and/or limitation of activities of daily living and loss of

independence;
(f)     Humiliation;
(g)     Embarrassment;
(h)     Pain and suffering;
(i)     Physical and emotional distress;
(j)     Past and future medical expenses;
(k)     Incidental and other expenses;
(l)     Loss of life's pleasures; and
(m)     Other injuries and conditions documented in Plaintiff's medical records.

50.     As a result of Plaintiff's injuries caused by Defendants, Plaintiff sustained serious physical and mental pain and great discomfort, all of which required medical care and treatment.

51.     As a result of Plaintiff's injuries caused by Defendants, Plaintiff suffered, and continues to suffer, great physical and mental pain, discomfort, and inconvenience, and will continue to suffer in the future and require additional medical care because Plaintiff's injuries are severe and permanent in nature.

52.     As a result of Plaintiff's injuries caused by Defendants, Plaintiff was forced to expend additional monies and incurred numerous expenses related to Plaintiff's medical treatment.

53.     As a result of Plaintiff's injuries caused by Defendants, Plaintiff may be forced to expend additional monies and may incur additional expenses related to Plaintiff's future medical treatment.

54.     Defendants are liable in tort to Plaintiff for their wrongful conduct pursuant to Michigan common and statutory law.

WHEREFORE, Plaintiff demands judgment against the Defendants for damages, and for costs, in an as yet unliquidated sum in excess of $75,000.00, and such other relief as this Court deems just and for a trial by jury on all issues so triable as a matter of right.

## COUNT II – NEGLIGENT FAILURE TO WARN
### (DEFENDANT MAXI-MATIC AND DOE DEFENDANTS)

55.     Plaintiff realleges and incorporates by reference every allegation of this Complaint

as if each were set forth fully and completely herein.

56.     Defendants had a duty to exercise reasonable care and comply with existing standards of care in the marketing, promotion, labeling, packaging, and sale of the product.

57.     Defendants failed to exercise reasonable care and failed to comply with existing standards of care in the marketing, promotion, labeling, packaging, and sale of the product. Defendants knew or should have known that using the product as instructed in the labeling created an unreasonable risk of harm.

58.     Defendants, their agents, servants, partners, and/or employees, failed to exercise reasonable care and failed to comply with existing standards of care in the following acts and/or omissions, among others:

(a)     Failing to warn of the dangers of using the product;
(b)     Failing to provide adequate warnings and/or instructions involving the use and/or potential risks of the product;
(c)     Failing to warn of the product's inadequate and unsafe design;
(d)     Promoting and marketing the product while knowing that the product had the potential for pressurized lid detachments, which can cause serious burn injuries;
(e)     Failing to warn in the product's labeling that the product had the potential for pressurized lid detachments, which can cause serious burn injuries;
(f)     Failing to warn in the product's promotions, advertising, publications, and other means of communication to the public and targeted client populations, that the product had the potential for pressurized lid detachments, which can cause serious burn injuries.

59.     Defendants' failure to warn of the product's inadequate and unsafe design was the proximate cause of Plaintiff's injuries, harm, and economic loss, from which Plaintiff continues to suffer.

60.     As a direct and proximate result of the aforementioned negligence and carelessness, as described above, Plaintiff, Letitia Allen, suffered the following injuries, all or some of which may be permanent in nature, including:

(a)    First and second-degree burns to the face, neck, arms, shoulders, torso and right foot, leaving large areas of scarring;

(b)    Emergency medical care and treatment by burn specialists;

(c)    Permanent scarring, bruising, and disfigurement;

(d)    Decreased mobility and dexterity;

(e)    Reduction and/or limitation of activities of daily living and loss of independence;

(f)    Humiliation;

(g)    Embarrassment;

(h)    Pain and suffering;

(i)    Physical and emotional distress;

(j)    Past and future medical expenses;

(k)    Incidental and other expenses;

(l)    Loss of life's pleasures; and

(m)    Other injuries and conditions documented in Plaintiff's medical records.

61.    The aforementioned negligence and wrongs done by Defendants were aggravated by the kind of malice, fraud, and grossly negligent disregard for the rights of others, the public, and Plaintiff, warranting exemplary damages under Michigan law. Defendants acted with a reckless disregard for Plaintiff's right by willfully and wantonly failing to investigate prior occurrences involving similar product defects, refusing to warn of these defects, and neglecting to investigate or recall the defective products which, when viewed objectively from Defendants' standpoint at the time of the conduct, involved an extreme degree of risk to consumers, including Plaintiff. Defendants were actually, subjectively aware of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others; or included material representations that were false, with Defendants knowing that they were false or with reckless disregard as to the truth and as a positive assertion, with the intent that the representations were acted on by Plaintiff.

62.    Defendants are liable in tort to Plaintiff for their negligent failure to warn pursuant to Michigan common and statutory law.

WHEREFORE, Plaintiff demands judgment against the Defendants for damages, and for costs, in an as yet unliquidated sum in excess of $75,000.00, and such other relief as this Court deems just and for a trial by jury on all issues as triable as a matter of right.

### COUNT III – NEGLIGENT DESIGN AND MANUFACTURING DEFECT
### (DEFENDANT MAXI-MATIC AND DOE DEFENDANTS)

63.     Plaintiff realleges and incorporates by reference every allegation of this Complaint as if each were set forth fully and completely herein.

64.     Defendants are liable to Plaintiff for the injuries and damages she sustained due to Defendants' negligent design of the product.

65.     At all relevant times to this lawsuit, Defendants owed a duty to all individuals and consumers, including Plaintiff, to assess, manage, and communicate the risks, dangers, and adverse effects of the product. The Defendants' duties included, but were not limited to, carefully and properly designing, testing, studying, and manufacturing the product.

66.     Defendants negligently and carelessly breached the above-described duties to Plaintiff by, among other acts and omissions, negligently and carelessly: (a) failing to use ordinary care in designing, testing, and manufacturing the product; (b) failing to design the product as to properly minimize the potential for severe burns; and (c) designing a product with a potential for pressurized lid detachment, which acts as a bomb, leading to the ejection of boiling hot contents.

67.     The product that was designed, manufactured, distributed, sold and/or supplied by Defendants was defective in design or formulation in that, when it left the hands of the manufacturer and/or supplier and/or distributor, the foreseeable risks exceeded the benefits associated with the design or formulation.

68.     The product that was designed, manufactured, distributed, sold and/or supplied by Defendants was defective in design or formulation in that, when it left the hands of the

manufacturers and/or suppliers and/or distributors, it was unreasonably dangerous due to its propensity for pressurized lid detachment, which can cause severe burns and other injuries.

69.     Despite Defendants' knowledge of the foreseeable risks and unreasonably dangerous nature of the product at all times relevant, Defendants designed and brought the product to market and continued to promote the product when there were reasonable, alternative, feasible, and safer designs available that would have lessened and/or eliminated Plaintiff's injuries.

70.     As a result of Defendants' negligent and reckless design of the product, Plaintiff sustained life-threatening and permanent injuries.

71.     The aforementioned negligence and wrongs done by Defendants were aggravated by the kind of malice, fraud, and grossly negligent disregard for the rights of others, the public, and Plaintiff, warranting exemplary damages under Michigan law. Defendants acted with a reckless disregard for Plaintiff's right by willfully and wantonly failing to investigate prior occurrences involving similar product defects, refusing to warn of these defects, and neglecting to investigate or recall the defective products which, when viewed objectively from Defendants' standpoint at the time of the conduct, involved an extreme degree of risk to consumers, including Plaintiff. Defendants were actually, subjectively aware of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others; or included material representations that were false, with Defendants knowing that they were false or with reckless disregard as to the truth and as a positive assertion, with the intent that the representations were acted on by Plaintiff.

72.     Defendants are liable in tort to Plaintiff for their negligent acts and design of the product pursuant to Michigan common and statutory law.

WHEREFORE, Plaintiff demands judgment against the Defendants for damages, and for costs, in an as yet unliquidated sum in excess of $75,000.00, and such other relief as this Court deems just and for a trial by jury on all issues as triable as a matter of right.

## COUNT IV – NEGLIGENT MISREPRESENTATION AND OMISSION
### (DEFENDANT MAXI-MATIC AND DOE DEFENDANTS)

73.     Plaintiff realleges and incorporates by reference every allegation of this Complaint as if each were set forth fully and completely herein.

74.     At all relevant times, Defendants negligently provided all individuals and consumers, including Plaintiff, with false or incorrect information, and/or omitted or failed to disclose material information concerning the product, including, but not limited to, misrepresentations regarding the safety and known risks of the product.

75.     The information distributed by the Defendants to all individuals and consumers, including advertising campaigns, labeling materials, print advertisements, and commercial media, was false and misleading and contained omissions concealing the truth about the dangers of the product.

76.     Defendants' intent and purpose in making these misrepresentations was to deceive and defraud the public, individuals, purchasers and consumers, including Plaintiff, to falsely assure them of the quality of the product, and induce the public, individuals, purchasers and consumers, including Plaintiff, to request, recommend, purchase, and use the product.

77.     Defendants had a duty to accurately and truthfully represent to the public, individuals, and consumers, including Plaintiff, the known risks of the product involving its propensity for pressurized lid detachment, which acts as a bomb, leading to the ejection of boiling hot contents.

78.     Defendants omitted in the product's labeling any instruction regarding the safety

measures that should be taken to protect against the product and pressurized lid detachment. Without these safety measures and instructions in place, users remained unaware of the dangers of the product.

79.     Defendants have made additional misrepresentations beyond the product labeling by representing the product as a safe.

80.     In reliance upon the false and negligent misrepresentations and omissions made by the Defendants, the public, individuals, purchasers and consumers, were induced to, and did use the product, thereby causing severe and permanent injuries.

81.     Consumers, like Plaintiff, would not have used the product had the Defendants not misrepresented and/or omitted the dangers resulting from the product.

82.     At the time Plaintiff used the product, Plaintiff was unaware of Defendants' negligent misrepresentations and omissions.

83.     Defendants failed to exercise ordinary care in making representations concerning the product while they were involved in their manufacture, design, sale, testing, quality assurance, quality control, promotion, marketing, labeling, and distribution in interstate commerce, because the Defendants negligently misrepresented the product's high risk of danger, including pressurized lid detachment, explosion, and burns from boiling contents.

84.     Plaintiff reasonably relied upon the misrepresentations and omissions made by the Defendants where the concealed and misrepresented facts were critical to understanding the true dangers inherent in the use of the product.

85.     Plaintiff's reliance on the foregoing misrepresentations and omissions was the direct and proximate cause of Plaintiff's injuries.

86.     As a direct and proximate result of the aforementioned negligence and carelessness,

as described above, Plaintiff, Letitia Allen, suffered the following injuries, all or some of which may be permanent in nature, including:

    (a)    First and second-degree burns to the face, neck, arms, shoulders, torso and right foot, leaving large areas of scarring;
    (b)    Emergency medical care and treatment by burn specialists;
    (c)    Permanent scarring, bruising, and disfigurement;
    (d)    Decreased mobility and dexterity;
    (e)    Reduction and/or limitation of activities of daily living and loss of independence;
    (f)    Humiliation;
    (g)    Embarrassment;
    (h)    Pain and suffering;
    (i)    Physical and emotional distress;
    (j)    Past and future medical expenses;
    (k)    Incidental and other expenses;
    (l)    Loss of life's pleasures; and
    (m)    Other injuries and conditions documented in Plaintiff's medical records.

87.    The aforementioned negligence and wrongs done by Defendants were aggravated by the kind of malice, fraud, and grossly negligent disregard for the rights of others, the public, and Plaintiff, warranting exemplary damages under Michigan law. Defendants acted with a reckless disregard for Plaintiff's right by willfully and wantonly failing to investigate prior occurrences involving similar product defects, refusing to warn of these defects, and neglecting to investigate or recall the defective products which, when viewed objectively from Defendants' standpoint at the time of the conduct, involved an extreme degree of risk to consumers, including Plaintiff. Defendants were actually, subjectively aware of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others; or included material representations that were false, with Defendants knowing that they were false or with reckless disregard as to the truth and as a positive assertion, with the intent that the representations were acted on by Plaintiff.

88.    Defendants are liable in tort to Plaintiff for their negligent misrepresentation and

omission pursuant to Michigan common and statutory law.

WHEREFORE, Plaintiff demands judgment against the Defendants for damages, and for costs, in an as yet unliquidated sum in excess of $75,000.00, and such other relief as this Court deems just and for a trial by jury on all issues as triable as a matter of right.

## COUNT V – BREACH OF EXPRESS WARRANTY
## (DEFENDANT MAXI-MATIC AND DOE DEFENDANTS)

89.     Plaintiff incorporates by reference and re-allege each and every allegation contained above, as though fully set forth herein.

90.     Plaintiff asserts a breach of express warranty of merchantability claim against Defendants.

91.     Defendants sold, and Plaintiff purchased, the product.

92.     Defendants misrepresented on the packaging, the "safety features" of the product.

93.     Defendants made these misrepresentations as to the "safety features" of the product in order to solicit consumers to purchase the product.

94.     Defendants' misrepresentations as to the "safety features" of the product were a basis of Plaintiff's purchase of the product sold by Defendant.

95.     Defendants' misrepresentations as to the "safety features" of the product constitutes a breach of express warranty.

96.     Defendants had notice and the opportunity to repair the defect repeatedly (by virtue of a recall), but failed to do so.

97.     Upon information and belief, Defendants also had constructive notice of the misrepresentations as to the "safety features" of the product prior to this incident and Plaintiff's injury on January 9, 2022.

98.     Plaintiff will be able to prove notice and Defendants' opportunity to cure through

common evidence at trial.

99.    As alleged, Defendants' product did not have the "safety features" it purported to have, because the product exploded, caused severe burns to Plaintiff.

100.    The product did not measure up to the promises or facts stated in the "safety features" advertisement and communications by and from Defendants.

101.    Defendants expressly warranted that the product was merchantable, fit, and safe for ordinary use.

102.    Defendants further expressly warranted that the product was fit for the particular purposes for which it was intended and sold.

103.    Contrary to these express warranties on the "safety features," which Plaintiff reviewed prior to purchase, Defendants' product was defective, unmerchantable, and unfit for its ordinary use when sold, and unfit for the particular purpose for which it was sold and operated.

104.    As a proximate result of Defendants' design, manufacture, marketing, sale, and distribution of the product, Plaintiff, Letitia Allen, suffered the following injuries, all or some of which may be permanent in nature, including:

    (a)    First and second-degree burns to the face, neck, arms, shoulders, torso and right foot, leaving large areas of scarring;

    (b)    Emergency medical care and treatment by burn specialists;

    (c)    Permanent scarring, bruising, and disfigurement;

    (d)    Decreased mobility and dexterity;

    (e)    Reduction and/or limitation of activities of daily living and loss of independence;

    (f)    Humiliation;

    (g)    Embarrassment;

    (h)    Pain and suffering;

    (i)    Physical and emotional distress;

    (j)    Past and future medical expenses;

    (k)    Incidental and other expenses;

    (l)    Loss of life's pleasures; and

    (m)    Other injuries and conditions documented in Plaintiff's medical records.

105.    Defendants are liable to Plaintiff for their wrongful conduct pursuant to Michigan common and statutory law.

WHEREFORE, Plaintiff demands judgment against the Defendants for damages, and for costs, in an as yet unliquidated sum in excess of $75,000.00, and such other relief as this Court deems just and for a trial by jury on all issues as triable as a matter of right.

## COUNT VI – BREACH OF IMPLIED WARRANTY

106.    Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

107.    Plaintiff asserts a breach of implied warranty of merchantability claim against Defendants.

108.    Pursuant to Mich. Comp. Laws § 440.2314 in order for goods to be considered "merchantable," the goods must (1) pass without objection in the trade under the contract description; (2) in the case of fungible goods, are of fair average quality within the description; (3) are fit for the ordinary purposes for which such goods are used; (4) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; (5) are adequately contained, packaged, and labeled as the agreement may require; and (6) conform to the promises or affirmations of fact made on the container or label if any.

109.    The concept of merchantability does not require that goods be the best quality or the best obtainable, but it does require that they have an inherent soundness which makes them suitable for the purpose for which they are designed.

110.    The ordinary purpose of Defendants' product was for culinary purposes, and thus, because Defendants' product exploded while pressurized, causing severe burns, it was not fit for the ordinary purposes for which the product was used.

111.     Plaintiff used the product in reliance upon Defendants' skill and judgment and the implied warranties of fitness for the purpose.

112.     The product was not altered by Plaintiff.

113.     Plaintiff was a foreseeable user of the product, and regardless, would be a third-party beneficiary of warranties express and/or implied pursuant to Mich. Comp. Laws § 440.2318 as an injured person by Defendants' breach of the warranty.

114.     Plaintiff used the product in the manner intended.

115.     As alleged, Defendants' product was not adequately labeled and did not disclose that the product may explode and cause severe burns.

116.     The product did not measure up to the promises or facts stated in the marketing, packaging, labeling, advertisement, and communications by and from Defendants.

117.     Defendants impliedly warranted that the product was merchantable, fit, and safe for ordinary use.

118.     Defendants further impliedly warranted that the product was fit for the particular purposes for which it was intended and sold.

119.     Contrary to these implied warranties, Defendants' product was defective, unmerchantable, and unfit for its ordinary use when sold, and unfit for the particular purpose for which it was sold and operated.

120.     As a proximate result of Defendants' design, manufacture, marketing, sale, and distribution of the product, Plaintiff, Letitia Allen, suffered the following injuries, all or some of which may be permanent in nature, including:

(a)     First and second-degree burns to the face, neck, arms, shoulders, torso and right foot, leaving large areas of scarring;
(b)     Emergency medical care and treatment by burn specialists;
(c)     Permanent scarring, bruising, and disfigurement;

21

     (d)     Decreased mobility and dexterity;

     (e)     Reduction and/or limitation of activities of daily living and loss of independence;

     (f)     Humiliation;

     (g)     Embarrassment;

     (h)     Pain and suffering;

     (i)     Physical and emotional distress;

     (j)     Past and future medical expenses;

     (k)     Incidental and other expenses;

     (l)     Loss of life's pleasures; and

     (m)     Other injuries and conditions documented in Plaintiff's medical records.

121.    Defendants are liable to Plaintiff for their wrongful conduct pursuant to Michigan common and statutory law.

WHEREFORE, Plaintiff demands judgment against the Defendants for damages, and for costs, in an as yet unliquidated sum in excess of $75,000.00, and such other relief as this Court deems just and for a trial by jury on all issues as triable as a matter of right.

### COUNT VII – VIOLATION OF UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW

122.    Plaintiff realleges and incorporates by reference every allegation of this Complaint as if each were set forth fully and completely herein.

123.    This cause of action is brought pursuant to the Michigan Consumer Protection Act.

124.    Defendants have engaged in unfair or deceptive acts or practices in violation of the Michigan Consumer Protection Act as set forth above.

125.    Defendants' practices as described herein are unfair or deceptive acts or practices that violate the Michigan Consumer Protection Act because the practices were and are intended to deceive individuals, purchasers, and consumers, including Plaintiff, and occurred and continue to occur in the course of conduct involving trade and commerce.

126.    As described more fully above, in Defendants' advertising, marketing, and sale of the product, Defendants misrepresented the product's safety and efficacy, and omitted any

reference to the product's adverse effects, including pressurized lid detachments, which acts as a bomb, leading to the ejection of boiling hot contents.

127.    Defendants knew, or should have known, that these misrepresentations and omissions were false, misleading, and would create a likelihood of confusion or of misunderstanding to individual consumers.

128.    As alleged in the preceding paragraphs, the misrepresentations and omissions by Defendants constitutes an unfair and fraudulent business practice within the meaning of Michigan Consumer Protection Act.

129.    As a direct result of the foregoing acts and practices, the Defendants have received, continue to receive, or will receive in the future, income, profits, and other benefits, which it would not have received if Defendants had not engaged in the violations of the consumer protection statutes as described in this Complaint.

130.    There were reasonably available alternatives to the Defendants' product, which would achieve similar results without the inherent danger and harm caused by the product.

131.    All of the conduct alleged herein occurred in Defendants' advertising, marketing, and sale of Defendants' product.

132.    Pursuant to the Michigan Consumer Protection Act, Plaintiff seeks an order requiring Defendants to disclose the misrepresentations and/or omissions, and an order awarding Plaintiff actual or compensatory damages, including treble damages; compelling restitution of the unnecessary financial sums wrongfully acquired by Defendants as a result of the misrepresentations and omissions; compelling the Defendants to pay civil penalties, which civil penalties shall be in addition to other relief which may be granted; compelling the Defendants to disgorge its ill-gotten profits; compelling the Defendants to pay the costs of the suit, including

attorneys' fees; awarding Plaintiff prejudgment interest and delay damages; and awarding Plaintiff such other, further, and different relief as this Honorable Court may deem just.

WHEREFORE, Plaintiff demands judgment against the Defendants for damages, and for costs, in an as yet unliquidated sum in excess of $75,000.00, and such other relief as this Court deems just and for a trial by jury on all issues as triable as a matter of right.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully demands judgment against Defendants and requests compensatory damages, together with interest, cost of suit, attorneys' fees, and all such other relief as the Court deems just and proper as well as:

A)    compensatory damages for past, present, and future damages, including, but not limited to, great pain and suffering and emotional distress and anguish, for personal injuries sustained by Plaintiff, health and medical care costs, together with interest and costs as provided by law;

B)    for all ascertainable economic and non-economic damages in an amount as provided by law and to be supported by evidence at trial;

C)    for specific damages according to proof;

D)    for exemplary damages according to proof against Defendants;

E)    for pre-judgment interest and post-judgment interest as allowed by law;

F)    for reasonable attorneys' fees;

G)    for the costs of these proceedings; and

H)    for such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial with regards to all claims.

Dated: November 20, 2024

*/s/ Joshua M. Neuman*
Joshua M. Neuman (License #: P84166)
Zachary A. Pogust (*pro hac vice* forthcoming)
**Pogust Goodhead, LLC**
161 Washington Street, Suite 250
Conshohocken, Pennsylvania 19428
Tel: (610) 941-4204
Fax: (610) 941-4245

*Attorneys for Plaintiff*

24